**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Charlene E. Franz**</u>

      **v.**                               Case No. 05-cv-201-PB

<u>**Purdue Pharma Co. et al.**</u>


<u>**MEMORANDUM AND ORDER**</u>

This action stems from plaintiff Charlene E. Franz's use of
OxyContin, a prescription painkiller she took at the direction of
her doctors.  Franz alleges that she became addicted to the drug
and suffered bodily and mental harm as a result.  She asserts a
variety of claims against defendants The Purdue Pharma Company,
Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick
Company, and The P.F. Laboratories (collectively, "Purdue"), as
well as against defendants The Abbott Laboratories and Abbott
Laboratories, Inc. (collectively, "Abbott") and defendant
Mallinckrodt, Inc. ("Mallinckrodt").  Purdue has filed a motion
for summary judgment (Doc. No. 13) in which Abbott and

Mallinckrodt have joined.[1]  For the following reasons, I grant defendants' motion.

## I.  FACTUAL BACKGROUND[2]

Purdue manufactures, markets, and distributes OxyContin, a prescription opioid analgesic drug that is sold in tablet form. Compl. ¶¶ 30, 32.  Abbott also markets and distributes OxyContin. Id. ¶ 33.  Purdue designed OxyContin, id. ¶ 32, which contains oxycodone hydrochloride.  Id. ¶ 34.  Mallinckrodt supplies oxycodone hydrochloride to Purdue.  Id.

In 1996, Franz's doctors prescribed OxyContin to help her manage a painful condition.  Pl.'s Br. at 1; Med. Rec. 10/11/96. Franz became addicted to the drug, Pl.'s Br. at 1, which is a Schedule II controlled substance under federal law.  Compl. ¶ 1. In October 2000, Franz was hospitalized for addiction to and withdrawal from OxyContin.  Pl.'s Br. at 1.  In April 2004, she

---

[1]  Purdue's arguments apply to Franz's claims against Mallinckrodt and Abbott, including those that name only Mallinckrodt as a defendant.  Accordingly, I treat the defendants as a group.

[2]  I describe the facts in the light most favorable to Franz, the non-moving party.

filed this lawsuit.[3]  She alleges that OxyContin and oxycodone hydrochloride are defective and unreasonably dangerous, that OxyContin was marketed based on fraudulent misrepresentations about its efficacy and sold without adequate instructions and warnings, and that Purdue and Abbott conspired to increase OxyContin's market share.  Her complaint includes claims for strict products liability, negligence, breach of the implied warranty of merchantability, fraud, and civil conspiracy.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, I construe the evidence in the light most favorable to the nonmovant. <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2001).

---

[3]  Franz originally filed this action in the Southern District of Illinois.  Purdue moved to have it transferred to South Carolina and then to New Hampshire.  Def.'s Br. at 2.

The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the adverse party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996).

### III.  **ANALYSIS**

**A.   Strict Products Liability, Negligence, Fraud, and Conspiracy**

Defendants argue that Franz's claims for strict products liability, negligence, fraud, and conspiracy are time-barred. The parties agree that this procedural issue is governed by Illinois law.  See Def.'s Br. at 7; Pl.'s Br. at 3 n.3.  Illinois has a two-year statute of limitations for "actions for damages for injury to the person." § 735 Ill. Comp. Stat. § 5/13-202. Franz's strict products liability, negligence, fraud, and

-4-

conspiracy claims are subject to the statute of limitations.[4]

Franz filed this action in April 2004, so her personal injury claims are time-barred if the statute of limitations began to run before April 2002.  Defendants argue that the statute began to run in October 2000, when Franz was hospitalized for addiction to and withdrawal from OxyContin.  In response, Franz invokes the Illinois "discovery rule" and contends that the limitations period did not commence until she realized that defendants wrongfully caused her injuries.  She claims that she "blamed herself for her addiction" until April 2003, in part because her doctor told her that OxyContin was safe and non-addictive when he prescribed it for her.  Pl.'s Br. at 5; Franz Aff. ¶ 4.  In April 2003, Franz allegedly heard about a

---

[4] Franz has not objected to defendants' categorization of her fraud and conspiracy claims as personal injury actions.  In Illinois, "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action."  Armstrong v. Guigler, 174 Ill. 2d 281, 286 (Ill. 1996).  Here, Franz has asserted claims for fraud and conspiracy, but the injuries she allegedly suffered as a result of defendants' conduct are clearly personal in nature.  Accord Pavlik v. Kornhaber, 326 Ill. App. 3d 731, 748 (Ill. App. 2001) ("Although count III is styled as a fraud claim, plaintiff alleges the same personal injuries alleged in her negligence count . . . . plaintiff's fraud count is controlled by the statute of limitations for personal injuries.").

television advertisement "concerning problems with OxyContin," Franz Aff. ¶ 8, and realized that defendants might have been responsible for her injuries.  Id. ¶ 9.

The Illinois discovery rule provides that "[a]n injured party's cause of action accrues, and the statute of limitations begins to run, when that person knows or reasonably should have known of the injury and also knows or reasonably should have known that the injury was caused by the actions of another." Kumpfer v. Shiley, Inc., 741 F. Supp. 738, 739 (N.D. Ill. 1990). "When the plaintiff becomes apprised of this knowledge, she is under an obligation to further determine whether an actionable wrong has been committed." Id.  Illinois law does not require that a person have actual knowledge of another's wrongful conduct before the limitations period begins to run.  Curry v. A.H. Robins Co., 775 F.2d 212, 216 (7th Cir. 1985).  Instead, a court must determine when "a reasonable person would have realized [that her injuries] might have been the result of actionable conduct." Id.  Although this is often a question of fact, where the undisputed facts permit only one conclusion, "'the question becomes one for the court.'" Id. at 217 (quoting Witherell v. Weimer, 85 Ill. 2d 146, 156 (Ill. 1981)).

-6-

The 7th Circuit's decision in Curry is instructive.  In that case, the plaintiff had surgery to remove an allegedly defective intrauterine device ("IUD") in 1974.  Although the plaintiff had been informed that the device was safe and effective, she experienced increasingly severe bleeding and pain after it was inserted.  She filed a lawsuit against the manufacturer of the IUD in 1983, claiming that she did not recognize its potential liability until 1981, when a co-worker suggested it.  Id. at 214. The 7th Circuit affirmed the district court's holding that the two-year statute of limitations began to run in 1974, when the plaintiff had surgery to remove the IUD.  Id. at 217.

Franz's situation is indistinguishable from Curry.  Even if Franz did not have actual knowledge of the potential connection between her injury and defendants' conduct until the television advertisement aired in April 2003, she reasonably should have realized that her injuries might have been caused by defendants at the time she was admitted to the hospital for OxyContin-related illness.  Although Franz's doctor told her that OxyContin was non-addictive when he prescribed it, a reasonable person would have questioned that statement after she became addicted to the drug and required inpatient care to treat symptoms of

-7-

withdrawal.  Upon her hospitalization, Franz reasonably should
have known that she had a possible claim against the defendants.
Accordingly, the statute of limitations began to run in October
2000 and expired in October 2002, well before Franz filed this
action.  Defendants' motion for summary judgment is granted as to
Franz's strict products liability, negligence, fraud, and
conspiracy claims.

**B.    Breach of the Warranty of Merchantability**

Defendants argue that Franz's breach of warranty claim fails
because she did not give them notice of her claim prior to filing
this action.[5]  New Hampshire law requires a plaintiff to provide
notice of an alleged breach of warranty to a seller within a
reasonable time after he discovers or reasonably should have
discovered the breach.  N.H. RSA § 382-A:2-607(3)(a).[6]  This
requirement extends to claims for breach of the implied warranty
of merchantability.  Hooksett School Dist. v. W.R. Grace & Co.,

---

[5]  Franz's breach of warranty claim is subject to a four-
year statute of limitations and defendants do not argue that it
is time-barred.  See Curry, 775 F.2d at 215.

[6]  Illinois law is identical, see 810 Ill. Comp. Stat. §
5/2-607(3)(a), although Franz has not contested the applicability
of New Hampshire law.

617 F. Supp. 126, 132 (D.N.H. 1984).  Franz has not alleged that she gave notice of her claim to defendants prior to filing this lawsuit.  Nor has she challenged defendants' reasoning as to the legal effect of failure to give notice.  See id.  As a result, defendants' motion for summary judgment is granted as to Franz's breach of warranty claim.

_____

## IV.  <u>CONCLUSION</u>

For the reasons described above, defendants' motion for summary judgment (Doc. No. 13) is granted.  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

/s/ Paul Barbadoro

_____
Paul Barbadoro
United States District Judge


February 22, 2006

cc:  Counsel of Record